IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUGLAS O. HARRIS & : | |
| CONNIE S. HARRIS, : | Civil Action No. 1:CV-09-2171 |
|     Plaintiffs, : | |
| : | (Chief Judge Kane) |
| v. : | |
| : | |
| JAMES E. DEARDORFF, JR., et al., : | |
|     Defendants : | |

## MEMORANDUM

Pending before the Court is Defendant Countrywide Bank, FSB's ("Countrywide") motion to dismiss Plaintiffs' amended complaint (Doc. No. 13) and Plaintiffs' motion for leave to file a second amended complaint (Doc. No. 38). Pursuant to the following analysis, the Court will deny Plaintiffs' motion for leave to amend and dismiss the claims asserted against Countrywide.

## I. Background

### A. Factual Background

The facts alleged in the second amended complaint[1] concern a "scheme to defraud homeowners of their home and their equity" spearheaded by Defendants Joanne Seeley ("Seeley") and James Deardorff, Jr. (Doc. No. 38, Ex. 1; Second Am. Compl. ¶¶ 16-24.) In November 2007, Plaintiffs Douglas and Connie Harris were facing a sheriff's sale of their home

---

[1] Even though Plaintiffs' motion for leave to amend will be denied, the Court will base its sufficiency of the claim analysis on the second amended complaint which was submitted by Plaintiffs. See infra n.3.

1

in New Cumberland, Pennsylvania. (Id. ¶ 18.)[2] Seeley and several of her cohorts offered Plaintiffs "credit counseling, a way to stop the sheriff's sale, help with their bills and the ability to stay in their home." (Id. ¶ 25.) Plaintiffs accepted the offer to enter into the "Seeley-Deardorff" program. (Id. ¶ 27.) Seeley then contacted Defendant Bill Bryson, an agent of Defendant Allsource Mortgage, to start the process of refinancing Plaintiffs' home. (Id. ¶ 28.) Seeley also sought appraisers who would return a high appraisal amount on the house. (Id. ¶¶ 29-36.) When such an appraisal was attained, Seeley "would submit the inflated appraisal value to Allsource and Bryson who would then submit it to Countrywide to be approved." (Id. ¶ 34.)

On January 18, 2008, Plaintiffs met with Seeley regarding a mortgage settlement. (Id. ¶ 35.) Plaintiffs "were led to believe that they were transferring their equity to someone else so that they would receive money to take care of their bills, that they would receive credit counseling to assist them and that they would remain in ownership of their homes." (Id. ¶ 43.) But "[i]nstead of signing an agreement to receive credit counseling, [Plaintiffs] unknowingly signed over their deed to [James and Lisa Deardorff] and signed other documents which stated that the homeowners would receive $190,000." (Id. ¶ 44.) Through Defendants Allsource and Meritage Settlement Services, LLC, the Deardorffs agreed to a mortgage provided by Countrywide for $171,000. (Id. ¶ 47.) Plaintiffs never received any of the money or credit counseling that had been promised to them. (Id. ¶¶ 48, 50-51.) Instead, the amount of money equal to the amount of equity in the home was held by Seeley and James Deardorff. (Id. ¶ 49.)

To stay in their home, Plaintiffs made biweekly $610 payments to investors in the

---

[2] Several of Plaintiffs' numbered paragraphs in the second amended complaint include the same enumeration. The Court will continue to cite to the paragraphs by number but will, to the extent necessary, clarify which paragraph the Court is referring.

"Seeley-Deardorff" program. (Id. ¶¶ 59-60.) By August 14, 2009, Plaintiffs were one month behind in their payments and were given notice to leave the premises. (Id. ¶¶ 61-62.) According to the second amended complaint, the deed of the house has been signed back to Plaintiffs as owners of the property by the Deardorffs. (Id. ¶ 63.) Countrywide, despite knowing of the existence of the Deed, has scheduled a sheriff's sale of the property. (Id. ¶ 64.)

### B. Procedural Background

Plaintiffs filed their complaint on November 6, 2009. (Doc. No. 1.) On January 25, 2010, Countrywide filed its first motion to dismiss. (Doc. No. 8.) In response, on February 15, 2010, Plaintiffs filed an amended complaint. (Doc. No. 10.) On March 1, 2010, Countrywide again moved to dismiss Plaintiffs' amended complaint. (Doc. No. 13.) Countrywide supported its motion with a brief in support. (Doc. No. 14.) After requesting and receiving several continuances in order to respond to the motion to dismiss (see Doc. Nos. 22, 25, 29) Plaintiffs' brief in opposition was due on June 28, 2010 (see Doc. No. 30). Rather than filing a brief in opposition, however, on June 14, 2010, Plaintiffs filed a second amended complaint. (See Doc. No. 33.) When doing so, Plaintiffs failed to include the opposing party's written consent or to seek leave of the Court. As a result, the Court struck the filing pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. (Doc. No. 34.)

On August 28, 2010, again instead of filing any brief in opposition, Plaintiffs sought leave to re-file the second amended complaint that the Court had previously stricken. (See Doc. No. 38.) Countrywide has submitted a brief in opposition to the motion for leave to amend. (Doc. No. 41.)

## II. Standard of Review

This case is uniquely postured to allow the Court to resolve the parties' motions under the same standard of review. Because the time for a "matter of course" amendment allowed by Rule 15 has passed, Plaintiffs "may amend [their] pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). A court is directed to "freely give [such] leave when justice so requires." Id. Here, Countrywide opposes Plaintiffs' motion for leave to amend because any amendments would be "futile, prejudicial, and based on dilatory motive." (Doc. No. 41 at 1.) "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (citations omitted).

In a Rule 12(b)(6) analysis, "courts 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). To undertake such an analysis, the Court should first separate the factual and legal elements of a claim. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)). All well-pleaded facts must be accepted as true, but mere legal conclusions may be disregarded. Id. The Court must determine whether the facts alleged in the complaint show that the claims are plausible and that the plaintiff is entitled to relief. Id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (stating that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative

level"). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556) (internal quotation marks omitted).

**III.    Discussion**

In challenging Plaintiffs' first and second amended complaints, Countrywide points to the legal insufficiency of each of the counts in which it is named as a defendant. (See Doc. Nos. 13, 41.) The Court will address each count in turn.[3]

**A.    Federal Due Process**

In Count 1, Plaintiffs claim that "all [D]efendants" – which presumably includes Countrywide – deprived Plaintiffs of federal due process under 42 U.S.C. § 1983 and the Fourteenth Amendment. Specifically, in the body of the complaint, Plaintiffs allege that "[t]here are now investors in this mortgage who are using the Federal agencies to deprive the Harris [sic] of their property without due process of law."[4] (Second Am. Compl. ¶ 67.) Countrywide argues

---

[3] Under Middle District of Pennsylvania Local Rule 7.6, a party's failure to file a brief in opposition to a motion is to be deemed as a lack of opposition to the motion. See M.D. Pa. L.R. 7.6. If any such motion to dismiss is unopposed, it may be dismissed without a merits analysis. See Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1992). Here, even though they have had ample opportunity to do so, Plaintiffs failed to file any brief in opposition to Countrywide's motion to dismiss. However, because an amended complaint with cognizable claims can "moot" an earlier motion to dismiss, see, e.g., Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 956 (8th Cir. 2002), the Court will undergo the merits analysis to determine whether Plaintiffs' second amended complaint states a cognizable claim against Countrywide.

[4] The first and second count of Plaintiffs' second amended complaint includes references to Defendants Bank of America and Everbank and a Plaintiff Dusich. (See Second Am. Compl. ¶¶ 73-83.) It appears to the Court that Plaintiffs' counsel inadvertently included the factual allegations from a separate case before the Court with those parties. See Dusich v. Seeley, No. 1:10-cv-1239 (M.D. Pa. filed June 11, 2010).

that Plaintiffs' amendment of a federal due process claim under 42 U.S.C. § 1983 is futile because Plaintiffs have not adequately alleged that Countrywide violated their federal rights while "acting under color of state law." (Doc. No. 41 at 7.) The Court agrees that Plaintiffs' conclusory allegation, without more, is insufficient to state a cognizable claim under Twombly and Iqbal. Plaintiffs have not alleged any facts that show that Countrywide deprived Plaintiffs of due process while clothed with state law authority. See Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999) ("The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." (citations and internal quotation marks omitted)). Therefore, the Court finds Plaintiff's motion is futile and will deny their claim.

### B. State Due Process

In Count 2, Plaintiffs make a state due process claim against Countrywide. (Second Am. Compl. ¶¶ 78-82.) Countrywide argues that Plaintiffs' state constitutional due process claim fails because "Plaintiffs have not alleged involvement of any state entity. . . . [or] specif[ied] what process they are owed and how Countrywide failed to provide it." (Doc. No. 41 at 9-10.) As with Count 1, the Court agrees with Countrywide. Any allegation by Plaintiffs that Countrywide acted under color of state law is conclusory and lacks any factual basis that would allow it to rise above a level of speculation. Accordingly, the motion for leave to amend will be denied, and the motion to dismiss will be granted as to this claim.

### C. Real Estate Settlement Procedures Act

In Count 3, Plaintiffs make a claim against Countrywide under the Real Estate Settlement

Procedures Act ("RESPA"), 12 U.S.C. § 2607, which prohibits fees or kickbacks for business referrals made pursuant to real estate settlements involving federally related mortgage loans. (Second Am. Compl. ¶¶ 85-110.) Plaintiffs allege that they "did not understand that they were selling their house." (Id. ¶ 89.) Plaintiffs then make a series of allegations that relate to the mortgage settlement conference that occurred on January 18, 2008, when Plaintiffs met with Defendant Seeley. Plaintiffs allege that Seeley, who was acting as an agent of Countrywide, agreed in a HUD-1 settlement form that Plaintiffs were to receive specified funds. (Id. ¶¶ 93-100.) However, any agreed-to funds were never received by Plaintiffs. (Id. ¶ 101.)

Countrywide contends that Plaintiffs lack standing to bring a RESPA claim, because "RESPA protects borrowers . . . not sellers, such as Plaintiffs." (Doc. No. 41 at 12.) As support, Countrywide points to the Third Circuit's decision in Alston v. Countrywide Financial Corp., 585 F.3d 753 (3d Cir. 2009), in which the court stated that "RESPA only authorizes suits by individuals who receive a loan accompanied by a kickback or unlawful referral." Id. at 763 (citing In re Carter, 553 F.3d 979, 989 (6th Cir. 2009)). The Court is persuaded that Plaintiffs lack standing to assert a RESPA claim against Countrywide as there is no allegation that they received a loan from Countrywide. Rather, it was the Deardorffs who agreed to a $171,000 mortgage provided by Countrywide. (Second Am. Compl. ¶ 47.) Plaintiffs have not provided the Court with any legal basis in rebuttal to demonstrate that they have standing. Therefore, the Court agrees that any amendment to Count 3 is futile and must be dismissed as against Countrywide.[5] See Johnson v. Ocwen Loan Servicing, 374 F. App'x 868, 874 (11th Cir. 2010)

---

[5] The Court notes that, even if Plaintiffs had standing to assert a RESPA claim against Countrywide, the statute of limitations would have run on the claim. RESPA requires that actions brought pursuant to 12 U.S.C. § 2607 be asserted within one year "from the date of the

7

("Here, it was clear that Johnson could prove no set of facts that would entitle her to relief, because she was not a party to the Ocwen loan and, therefore, lacked standing to bring any claim based on that loan."); In re Carter, 553 F.3d at 989 ("RESPA does not authorize suits by members of the public at large; it authorizes suits only by individuals who receive a loan that is accompanied by an unlawful referral, which is plainly an individualized injury.").

### D. Internal Revenue Code

In Count 7, Plaintiffs claim that Countrywide violated the Internal Revenue Code, 26 U.S.C. § 7434, by failing to file a proper 1099-S form. (Second Am. Compl. ¶¶ 124-30.) Section 7434 allows for a private cause of action to be raised by a person against someone who "willfully files a fraudulent information return with respect to payments purported to be made to [that] other person." 26 U.S.C. § 7434(a). Countrywide contends that Plaintiffs fail to state a viable claim, inter alia, "because 1099-S forms do not constitute 'information returns' for Section 7434 purposes." (Doc. No. 41 at 16.) Those "information returns" covered by § 7434 are defined by 26 U.S.C. § 6724(d)(1)(A). 26 U.S.C. § 7434(f). Section 6724(d)(1)(A) includes nine different types of returns, none of which involves a return relating to proceeds from real estate transactions. See 26 U.S.C. § 6724(d)(1)(A). Therefore, this claim against Countrywide is not cognizable and any amendment to it would be futile.

### E. Negligent Misrepresentation or Negligence

In Counts 10 and 16, Plaintiffs allege claims of negligence and negligent misrepresentation against Countrywide. To prevail on either claim, a plaintiff must allege, inter

---

occurrence of the violation." 12 U.S.C. § 2614. The closing in this case occurred January 18, 2008. Plaintiffs did not file suit until November 6, 2009.

alia, that a defendant owed the plaintiff a duty recognized by law. See McCandless v. Edwards, 908 A.2d 900, 903 (Pa. Super. Ct. 2006), allocator denied, 923 A.2d 1174 (Pa. 2007); Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 771 (3d Cir. 2009). Countrywide argues that Plaintiff has failed to make any allegation that Countrywide owed Plaintiffs any duty recognized by law. (Doc. No. 41 at 18.) According to the second amended complaint, the Deardorffs took out the Countrywide mortgage, not Plaintiffs. As a result, Countrywide had no relationship with Plaintiffs and owed them no duty. Plaintiff's allegations that Seeley acted as an agent of Countrywide are devoid of any factual allegations to support such a theory of liability. See Williams v. Rene, 72 F.3d 1096, 1099 (3d Cir. 1995) (stating that a principal is responsible for the negligence of its servants "that occurs within the course and scope of their employment" ). Plaintiffs have not provided any legal argument to the Court that would establish any duty on the part of Countrywide. Therefore, Plaintiffs claims of negligence and negligent misrepresentation are futile and must be dismissed.

**IV.     Conclusion**

Based on the foregoing analysis, the Court will deny Plaintiffs' motion for leave to amend as futile and grant Countrywide's motion to dismiss. Accordingly, the Court need not address the additional grounds raised by Countrywide for denying leave to amend. An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DOUGLAS O. HARRIS &** : | |
| **CONNIE S. HARRIS** : | Civil Action No. 1:CV-09-2171 |
|     **Plaintiffs,** : | |
| : | (Chief Judge Kane) |
| **v.** : | |
| : | |
| **JAMES E. DEARDORFF, JR., et al.,** : | |
|     **Defendants** : | |

# ORDER

**NOW**, this 14th day of October 2010, for the reasons set forth in the accompanying memorandum, it is **HEREBY ORDERED THAT**:

1. Plaintiffs' motion for leave to file a second amended complaint, (Doc. No. 38), is **DENIED**.

2. Defendant Countrywide's motion to dismiss Counts 1, 5, 8, and 13 of Plaintiffs' amended complaint, (see Doc. Nos. 10, 13), is **GRANTED**.

3. Defendant Countrywide's first motion to dismiss, (Doc. No. 8), is **DISMISSED AS MOOT**.

4. Defendant Countrywide is discharged from further liability in this matter and is **DISMISSED, WITH PREJUDICE**.

                                                S/ Yvette Kane
                                                Yvette Kane, Chief Judge
                                                United States District Court
                                                Middle District of Pennsylvania